FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 FEB 24  AM 7:20

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KEITH JACOBS** | **CIVIL ACTION** |
| VERSUS | NO. 04-3352 |
| **JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY** | SECTION "C" (4) |

## REPORT AND RECOMMENDATION

This is an action brought pursuant to **Title 42 U.S.C. § 405(g)** for judicial review of a final decision of the Commissioner of Social Security denying Keith W. Jacobs Sr.'s claim for Disability Insurance Benefits under the Social Security Act. The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b) and Local Rule 19.02E(b), for the submission of Proposed Findings and Recommendations.

**I.      Factual Summary and Procedural History**

Keith W. Jacobs, Sr. ("Jacobs") a forty-eight-year-old male with a seventh grade education and previous work history as an electrician and alarm installer, filed a request for Social Security Disability Benefits on July 29, 2002. He alleges that he has been disabled since June 2002 from back impairments consisting of degenerative disc disease, disc herniation with impingement on the S1 nerve root, a diffuse disc bulge at the L4-5 level, and bilateral neural foraminal narrowing at the L5-S2 level. (Tr. 43, 48, 213-215).

___ Fee_____
___ Process_____
_X_ Dktd_____
_√_ CtRmDep___
___ Doc. No____

Jacob's application for disability determination was denied on November 1, 2002. (Tr. 23). On November 14, 2002, he requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 28). On May 22, 2003, a hearing took place before ALJ Eve B. Godfrey. (Tr. 30, 184-209).

On March 25, 2004, the ALJ concluded that Jacobs was not eligible for disability and accordingly denied Jacobs's request for disability benefits. (Tr. 11-20). In so doing, the ALJ found that Jacobs suffers from degenerative disc disease, a severe impairment, but concluded that the impairment does not meet or equal the requirements of the listing level contained in Appendix 1 of Subpart P Regulation No. 4. (Tr. 19).

The ALJ stated that the evidence did not document significant nerve root compression, there was no clinical evidence of muscle atrophy nor was there evidence of significant sensory deficits. (Tr. 16). She further noted that at the hearing, Dr. Richard Clay concluded that his back impairment did not equal a listing. (Tr. 16). The ALJ also found that Jacobs's allegations regarding his limitations were not totally credible. (Tr. 19).

She further found that while Jacobs had no acquired work skills transferable to the skilled or semiskilled work activities of other work within his residual functional capacity, he could still work. (Tr. 7). She also found that there were significant numbers of jobs existing in the regional and national economy. (Tr. 19). She therefore concluded that Jacobs was not disabled pursuant to 20 C.F.R.§ 404.1520(g)(1). *Id.*

Jacobs now seeks review of the ALJ's decision contending that it is erroneous because she (1) failed to find that the claimant met or equaled Listing Level 1.04(c) and (2) failed to consider the side effects of the plaintiff's medication when addressing his residual functional capacity.

The Commissioner contends that the claimant has not identified a reversible error at the third step of the ALJ's required analysis, and that the case upon which Jacobs relies is distinguishable from the subject case. The Commissioner further contends that Jacobs's statements regarding the medication side effects is insufficient evidence to constitute a significant work-related limitation, and other objective evidence of the claim is required. Thus, the Commissioner contends that the ALJ's opinion is based upon substantial evidence. Having set for the position of the parties, the Court will now consider the merits of the matter.

## II.   Standard of Review

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is to determine whether there is substantial evidence in the record to support the determination of the fact finder. The Court may not re-weigh the evidence, try issues *de novo* or substitute its judgment for that of the secretary. *Allen v. Schweitker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389 (1971); *see also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981) (citations omitted).

Substantial evidence is more than a scintilla and less than a preponderance, and is considered such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *See Richardson*, 402 U.S. at 401. It must do more than create a suspicion of the existence of the fact to be established and a Court will not find "substantial evidence" if there is a "conspicuous absence of credible choices" or "contrary medical evidence." *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

The Social Security Act defines disability as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted . . . for a constructive period of not less than twelve months." 42 U.S.C. §§ 416(i)(1), 423 (d)(1)(A). Section 423(d)(3) of the Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

When determining whether a claimant is capable of engaging in any substantial gainful activity, the Secretary applies a five-step sequential evaluation process. The rules governing the steps of this evaluation process are: (1) a claimant who is working and engaging in substantial gainful activity will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work. *See Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).

The burden of proof is on the claimant for the first four steps, but shifts to the Secretary at step five. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

**III.   Analysis**

    **A.   Listing Level Impairments for Section 1.04(A) and Section 1.04(C)**

Jacobs contends that the ALJ erred because she failed to find that he met or equaled a listing including, but not limited to, Listing Level § 1.04( C).[1] Conversely, the defendant contends that the ALJ implicitly determined that Jacobs did not meet the § 1.04(C) requirements so she proceeded to the next step. Further the commissioner contends that Jacobs cannot show that he met the § 1.04(A) or § 1.04(C) listing requirements.

Section 1.04, Disorders of the Spine, provides that a claimant must show conditions such as "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis [or] vertebral fracture . . . resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. 20 C.F.R. Pt. 404 Subpt. P. App. 1 § 1.04. Subsection A of § 1.04 requires that the "[n]erve root compression [must be] characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404 Subpt. P. App. 1. § 1.04(A).

Section 1.04(C) requires the presence of spinal stenosis[2] resulting in pseudoclaudication[3], established by acceptable imaging, manifested by chronic non-radicular pain and weakness. 20

---

[1] Plaintiff's, Keith W. Jacobs, Sr.'s Brief in Support of His Appeal, at 8. (Rec. Doc. No. 8).

[2] Spinal stenosis is when one or more areas in the spine narrow especially in the upper or lower back putting pressure on the spinal cord or on the roots of the nerves branching off from the spinal cord. Spinal Stenosis, http://www.mayoclinic.com/health/spinal-stenosis/DS00515.

[3] Pseudoclaudication is pain and discomfort in the buttocks, legs and feet due to narrowing of the spinal canal (spinal stenosis). The discomfort typically increases when standing or walking and improves with a change of position, such as from standing to sitting or bending forward at the waist. Pseudoclausication, Q&A, http://www.mayoclinic.com/health/pseudoclaudication/HQ01278.

C.F.R. Pt. 404 Subpt. P. App. 1 § 1.04(C). The stenosis must also result in an inability to ambulate effectively as defined by 20 C.F.R. Pt. 404 Subpt. P. App. 1 § 1.00(B)(2)(b).[4] *Id.*

The Commissioner contends that the ALJ implicitly considered the requirements of § 1.04(C) and, citing *Hernandez v. Heckler*, 704 F.2d 857 (5th Cir. 1983), contends that the ALJ did not have to explicitly provide its analysis and rejection of his claim. In *Hernandez*, the Circuit Court held that when the ALJ bypasses the first three steps and proceeds to evaluate the residual functional capacity of the claimant, that it reflects a judgment that the first three steps were not determinative. *Hernandez*, 704 F.2d at 860. In such a circumstance, the ALJ was not required to follow the explicit direction of 404.1526(a). *Id.*

However, in this case, the ALJ never considered whether Jacobs met the severe impairment requirements of §1.04(C). There is no indication in the opinion that she evaluated whether Jacobs has spinal stenosis resulted in pain in the buttocks, legs, and feet. It is clear that she only considered whether Jacobs met the §1.04(A) requirements[5] and not the §1.04(C) requirements.

Furthermore, the MRI of May 16, 2001 shows evidence of foraminal stenosis which is a narrowing of one or more nerve exit holes (foramina) in the spine. (Tr. 114). Additionally, the medical evidence shows that at the L5-S1 level Jacobs also had an annular bulge which causes lateral recess stenosis, stenosis in the tract where the nerve root exits the central canal. *Id.* Jacobs,

---

[4] 20 C.F.R. Pt. 404 Subpt. P. App. 1 § 1.00(B)(2)b defines the inability to ambulate effectively as an "extreme limitation of the ability to walk." It is further defined as having "insufficient lower extremity functioning to permit ambulation without an assistive device that limits the functioning of both upper extremities."

[5] The ALJ held that radiographic evidence failed to document significant nerve root compression, nor is there clinical evidence of signs of muscle atrophy or significant sensory deficits, as required to meet or medically equal listing 1.04 in the above cited regulation. (Tr. 16)

therefore, has stenosis in two parts of his spine which the ALJ failed to consider in reaching the conclusion that he did not meet the § 1.04 listing level requirements.

It is well settled that a failure to evaluate and provide specific reasons for rejecting probative evidence constitutes grounds for a remand to the secretary. *Thompson v. Sullivan,* 741 F, Supp. 1297,1301 (N.D. Ill.1990). Further, while the Court recognizes that it is its function to determine whether the ALJ's findings are supported by substantial evidence, this task is impossible where, as here, no reasons are provided and no analysis of all the evidence is clearly stated. *Dantin v. Apfel,* No.CIV.A.97-1835, 1998 WL 397896, at *3 (E.D.La. July 10, 1998). Because the Court cannot determine whether the ALJ appropriately considered whether Jacobs met the listing level requirements for §1.04(C) it is ordered that the ALJ's opinion be reversed and remanded for further consideration of the evidence in a manner consistent with the regulations.

### B. <u>Failure to Consider the Side Effects of Medication in the RFC</u>

Jacobs next contends that the consulting physician failed to consider the side effects of his prescribed medication when the physician determined Jacobs's residual functional capacity. Jacobs contends that this is reversible error, citing to *Francois v. Commissioner of Social Security*, 158 F.Supp. 2d 748, (E.D. La. 2001). The Commissioner contends that the *Francois* Court did not reverse the ALJ's decision because the ALJ failed to consider the side effects of medication, but on other grounds, and is, therefore, distinguishable from the subject case.

Title 20 C.F.R. § 404.1545 defines residual functional capacity ("RFC") as what a claimant can do despite his physical and mental impairments and symptoms. These impairments may cause a limitation of function which may be exertional, nonexertional, or a combination of both. *See* 20 C.F.R. § 404.1569a(a).

7

Limitations that affect a claimants ability to meet the strength demands of the job are exertional. *Id.* These limitations affect the claimants ability to sit, stand, walk, lift, carry, push or pull. 20 C.F.R. §404.1569a(b). Limitations are non-exertional when the claimant has difficulty functioning because he is nervous, anxious, depressed, has difficulty concentrating, understanding, seeing, hearing, or tolerating the physical features of certain work settings. 20 C.F.R. § 404.1569a(c). Pain is generally considered a non-exertional impairment because it can affect concentration, posture, reaching, sitting and standing duration, and lifting. *Scott v. Shalala*, 30 F.3d 33, 34 (5th Cir. 1994). Also, when considering the RFC, the fact finder must consider all forms of treatment including the side effects of medication. SSR 96-8p.

The record reflects a RFC was performed. Based on the RFC, the ALJ concluded that Jacobs retained the functional capacity for a wide range of work at the sedentary exertional level. She concluded that he could lift up to 10 pounds frequently, 20 pounds occasionally, and sit, stand, and walk throughout the work day as long as he changed position every thirty minutes. She further found that Jacobs should avoid stooping, climbing, crawling, working at heights, and around vibrations. Finally, she noted that Jacobs had no mental limitations.

There is no evidence in the RFC that the consultative physician considered the medications that Jacobs was taking and whether the medications would further limit his ability to work. Further while the ALJ acknowledged that she was required to consider the medications Jacobs was taking as a source of medical treatment to obtain relief, the opinion is devoid of any such consideration.

The ALJ's decision made no mention about Jacobs's pain medications or whether the medications caused his alleged side effects. This Court notes that according to the record, Jacobs's

8

medications did not always work as he made continuous complaints of pain to his doctors. Additionally, the record indicates that Jacobs's prescribed medications caused him some dizziness.

The record shows that in his application for benefits, Jacobs listed the medications that his treating doctors prescribed him. (Tr. 47). He indicated that he takes Vicodin/Hydrocodone[6], Soma or Carisoprodal[7] and Lumigan[8]. *Id.* He complained that as a result of taking Vicodin and Soma, he gets drowsy. *Id.* The record confirms that as of October 16, 2002, Jacobs was still being prescribed Soma and Vicodin by his treating physician. (Tr. 169). There is also evidence that on each visit he was given additional prescriptions to treat his pain and muscle spasm. (Tr. 91, 97-113, 116-121). Jacobs confirmed during the administrative hearing that the medications makes him "sleepy and lazy". (Tr. 195).

The medical literature confirms that drowsiness is one of the potential side effects of Vicodin and Soma.[9] The Court is also troubled by the ALJ's failure to make a finding pertaining to the level of medications plaintiff's doctors prescribed for treating his conditions.[10]

The ALJ may not selectively discuss only such evidence which favors her ultimate conclusion. The failure to consider an entire line of evidence conflicts with the ALJ's obligation to

---

[6] Vicodin combines a narcotic analgesic and cough reliever with a non-narcotic analgesic for the relief of moderate to moderately severe pain. http://consumer.pdr.net/drug_info/rxdrugprofiles/drug/vic1480.shmtl.

[7] Soma is used along with rest and physical therapy for the relief of acute, painful muscle strains and spasms. http://consumepdr.net/drug.net/drug_info/rxdrugprofies/drug/som1409.shtml.

[8] Lumigan is an eye drop that combats high pressure inside the eyeball. It is prescribed for a condition called open angle glaucoma (a gradual increase of pressure in the eye). It is typically used after other remedies have caused problems or fail to work. It lowers pressure by promoting drainage of the fluid (aqueous humor) that fills the eye.

[9] http://consumer.pdr.net/drug_info/rxdrugprofiles/drugs.

[10] *Francois v. SSA*, 158 F. Supp. 2d 748(E.D.L.A. 2001); *See also Ferstl v. Barnhart* 360 F. Supp. 2d 1181 (D.Kan. 2005).

consider all of the evidence. Therefore, the ALJ on remand should be required to consider the side effects of the claimant's medications and whether they further restrict his ability to work.

## IV. Recommendation

For the reasons assigned herein, it is **RECOMMENDED** that the ALJ's decision denying Keith W. Jacobs Sr.'s Disability Insurance Benefits be **REVERSED** and **REMANDED** for consideration of all the evidence as detailed in this report and recommendation.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 23rd day of February, 2006

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE